UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

-vs-                                                             Case No. 6:08-cr-117-Orl-19GJK

**DAMIAN JAMIL SMITH,**

        **Defendant.**

_____

# ORDER ON DEFENDANT'S OBJECTIONS

This case comes before the Court on the following:

1.     Sentencing Memorandum by Defendant Damian Jamil Smith (Doc. No. 87, filed Sept. 24, 2009);

2.     Addendum to Defendant Damian Jamil Smith's Sentencing Memorandum by Defendant Damian Jamil Smith (Doc. No. 91, filed Oct. 12, 2009); and

3.     Sentencing Memorandum by Plaintiff United States of America (Doc. No. 95, filed Oct. 22, 2009).

**Background**

Defendant previously pled guilty in state court and was sentenced to ten years imprisonment for robbery, false imprisonment, and aggravated assault with a deadly weapon. Defendant also pled guilty in federal court to (1) two counts of robbery in violation of 18 U.S.C. § 1951(a), for each of which the maximum term of imprisonment is 20 years; (2) brandishing a firearm during the commission of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii), for which the mandatory term of imprisonment is 7 years and the maximum is life; and (3) a second firearm

offense in violation of 18 U.S.C. § 924(c)(1)(C)(I), for which the mandatory term of imprisonment is 25 years and the maximum is life.

Defendant raised a number of objections to the Presentence Report in a sentencing memorandum. (Doc. No. 87.) On September 28, 2009, the Court held a sentencing hearing during which Defendant withdrew some of his objections. (Doc. No. 88.) The Court continued the sentencing to allow the parties to brief the remaining issues: (1) whether the sentencing enhancement under U.S.S.G. § 2B3.1(b)(1) for taking the property of a financial institution applies; (2) whether consecutive sentences must be imposed for the conduct prohibited by 18 U.S.C. § 924(c); (3) whether the "except" clause in Section 924(c)(1)(A) has any effect on the seven and twenty-five year sentences to be imposed pursuant to subsections (c)(1)(A)(ii) and (c)(1)(C)(i); and (4) whether the Court should impose a sentence for robbery consecutive to Defendant's ten-year state robbery sentence. Defendant filed an addendum to his sentencing memorandum addressing these issues (Doc. No. 91), and the Government responded in opposition. (Doc. No. 95.)

**Analysis**

**I.      Whether the Sentencing Enhancement under U.S.S.G. § 2B3.1(b)(1) Applies**

U.S.S.G. § 2B3.1(b)(1) states "if the property of a financial institution or post office was taken, or if the taking of such property was an object of the offense, increase by 2 levels." Thus, the enhancement applies if either (1) the money taken from the ATM was the bank's property; or (2) the taking of the bank's money was the object of the offense. Neither party contends that taking the bank's money was the object of the offenses here. Therefore, the issue is whether the money taken from the ATMs by Defendant or by the account holder under duress created by Defendant was the

property of a bank.[1]  No court had discussed this issue in the context of a violation of the federal robbery statute, 18 U.S.C. § 1951(a).[2]  However, four analogous issues offer guidance: (1) who bears the risk of loss of unauthorized ATM withdrawals under the Electronic Funds Transfer Act; (2) whether funds withdrawn under duress are property of a bank under the federal bank robbery statute, 18 U.S.C. § 2113(a); (3) what result best complies with the primary purpose of the sentencing enhancement at issue here; and (4) how the legal title of cash is affected by an unauthorized transfer under the common law.

**A. Risk of Loss of Unauthorized ATM Withdrawals**

The withdrawals here were either made by Defendant after robbing the account holders' ATM cards and PINs or by the account holders under duress created by Defendant.  In either case, the withdrawals were "unauthorized electronic funds transfers" as defined by the Electronic Funds Transfer Act, 15 U.S.C. § 1693, et seq. and the Official Staff Interpretations of the term, 12 C.F.R. Pt. 205, Supp. I, effective December 10, 2007.

Pursuant to the Electronic Funds Transfer Act, 15 U.S.C. § 1693g(a),(e), an account holder

---

[1] Only one of the many ATM withdrawals underlying the two counts of robbery here was made by an account holder.  The other withdrawals were made by Defendant and his co-defendant using the account holders' ATM cards.  (*Compare* Doc. No. 70 at 17, filed June 25, 2009 (Defendant Dunn forced the account holder to withdraw $700 from her checking account), *with id.* (Defendant Dunn withdrew $240 from the account holder's checking and savings accounts using the account holder's Washington Mutual bank card); *id.* at 18 (Defendants used the bank cards of the account holders to withdraw cash at several ATM machines from their respective bank accounts at Bank of America).)  As discussed herein, applying the sentencing enhancement for both withdrawal methods is appropriate.

[2] Defendant argues that the sentencing enhancement for taking the property of a bank cannot apply because Defendant pled guilty to robbery in violation of 18 U.S.C. § 1951, not bank robbery in violation of 18 U.S.C. § 2113.  (Doc. No. 87 at 9.)  However, this argument must be rejected because the sentencing guidelines provide that this sentencing enhancement may apply to the crime of robbery in violation of 18 U.S.C. § 1951.  *See* U.S.S.G. Manual (2008), "Statutory Provisions" at 112.

is liable for only the first $50 of an unauthorized electronic funds transfer, and the remainder of the risk of loss falls on the bank. Two enumerated examples of unauthorized electronic funds transfers are "a transfer initiated by a person who obtained the access device [such as an ATM card and PIN] from the consumer through fraud or robbery," 12 C.F.R. Pt. 205, Supp. I, § 2(m)(3), and a withdrawal made by a customer at an ATM which is induced by force. *Id.* § 2(m)(4). Defendant's conduct here falls squarely within these examples of unauthorized electronic funds transfers. Therefore, the Electronic Funds Transfer Act determines who bears the risk of loss of the ATM withdrawals here.

All but one of the unauthorized ATM withdrawals here were greater than $50. *See* Plea Agreement at 17-19. For each of those withdrawals over $50, the bank was partially liable, and for the larger withdrawals (i.e. $700, $700, $500), the bank was primarily liable. Because the banks primarily bore the risk of loss of the unauthorized ATM withdrawals, the money taken from the ATMs here was the property of the bank whether it was withdrawn by Defendant or by the account holders under duress created by Defendant.

### B. Analogy to Federal Bank Robbery Statute, 18 U.S.C. § 2113(a)

The federal bank robbery statute, 18 U.S.C. § 2113(a), provides further support for applying the sentencing enhancement where the account holder withdraws money under duress created by Defendant. The federal bank robbery statute requires the taking of money "belonging to, or in the care, custody, control, management, or possession of" a bank. Circuits do not agree whether an account holder's withdrawal of funds from an ATM under duress constitutes the taking of money "belonging to, or in the care, custody, control, management, or possession of" a bank.

In *United States v. McCarter*, 406 F.3d 460 (7th Cir. 2005), the defendant's conviction for attempted bank robbery was affirmed where the defendant accosted a woman in a parking garage,

obtained her ATM card from her purse, stated "I see you have a bank card; we're going for a little ride," forced the victim to drive her car out of the garage at gunpoint, and fled the car before the victim drove out of the parking garage. *Id.* at 461-62. The court presumed that had the defendant not fled, he would have forced the victim to withdraw money from an ATM. *Id.* at 462. In upholding the conviction for attempted bank robbery, the Court held that money inside an ATM was "in the care, custody, control, management, or possession of the bank," and that a bank robbery would have occurred even though the victim would have withdrawn the money from the ATM because as "the robber forces the [victim] to withdraw money, the customer becomes the unwilling agent of the robber, and the bank is robbed." *Id.* at 463. Under that reasoning, the customer's ATM withdrawal made under duress created by Defendant was the robbery of the bank's money.

In so holding, the Seventh Circuit distinguished *United States v. Van*, 814 F.2d 1004, 1006-08 (5th Cir. 1987), which held that no bank robbery occurred where the victim was robbed of money she withdrew from the bank after she left the bank premises. *McCarter*, 406 F.3d at 463. In *Van*, the defendants broke into the victim's house and ordered her to give them the money that they knew she recently received from a social security claim. *Van*, 814 F.2d at 1005. When the victim claimed to have deposited the balance of those proceeds in her bank account, the defendants kidnapped the victim's daughter and instructed the victim on the next day to withdraw money from her bank account and deliver it to the kidnappers at a convenience store. *Id.* The court in *Van* found no bank robbery despite the duress placed on the victim because the money did not "belong to" a bank and it was not in the "care, custody, control, management, or possession of a bank" when the victim surrendered the money to the defendant at the convenience store. *Van*, 814 F.2d at 1007.

The Fifth Circuit Court of Appeals relied on *Van* and rejected *McCarter* in holding that an ATM withdrawal made by a victim under duress and in the defendant's presence was not a bank

robbery in *United States v. Burton*, 425 F.3d 1008 (5th Cir. 2005). There the defendant grabbed the victim from behind and demanded money. *Id.* at 1009. The victim told the defendant that she only possessed a few dollars and an ATM card. *Id.* The defendant then drove the victim to an ATM and ordered the victim to withdraw money. *Id.* From the passenger seat of the car, the victim used her ATM card to withdraw $150 and then immediately handed the money to the defendant. *Id.* In reversing the defendant's conviction for bank robbery, the court held that this case, like *Van*, was not a case in which the defendant sought the bank's money. Rather, the defendant sought only the money that the victim controlled through her ATM card. *Id.* Accordingly, the victim "made a valid - albeit coerced - withdrawal of her own funds, which [the defendant] then stole." *Id.* Both the *Van* and *Burton* panels also emphasized that the bank did not have control or possession of the money at the instant the money was ultimately transferred to the defendants, regardless of the duress existing at the time. *Id.* at 1010-11; *Van*, 814 F.2d at 1007. Both courts also noted that only the victim's money and none of the bank's money was transferred to the defendants. *Burton*, 425 F.3d at 1010; *Van*, 814 F.2d at 1007.

The situation here is more analogous to the facts in *McCarter* and *Burton* than those in *Van*. Like what happened here, the facts in *McCarter* and *Burton* concerned an account holder withdrawing money from an ATM in the defendant's presence and while under duress. On the other hand, the distressed account holder in *Van* previously and unilaterally withdrew money from the bank and then was robbed elsewhere. *McCarter* and *Burton*, however, reached opposite results on nearly identical facts. The result in *McCarter* is preferred because it gave legal effect to the account holder's duress by finding that the account holder was the unwilling agent of the defendant. In addition, the *McCarter* panel's holding that the withdrawn funds belong to the bank squares with placing the risk of loss of an unauthorized ATM withdrawal primarily on the bank pursuant to the

Electronic Funds Transfer Act. Adopting the reasoning of *McCarter*, the withdrawn funds belonged to the bank, and the sentencing enhancement should apply.

### C. Purpose of U.S.S.G. § 2B3.1(b)(1)

U.S.S.G. § 2B3.1(b)(1) exists "to punish robberies of financial institutions and post offices more severely because those entities typically keep large amounts of readily available cash and therefore are particularly attractive as robbery targets." *United States v. Dudley*, 102 F.3d 1184, 1197 (11th Cir. 1997). An ATM, like a bank, contains a large amount of cash and is an attractive robbery target. Because the ATM withdrawals provided the defendants with significantly more money than what they otherwise would have obtained from the person of the account holders, the sentencing enhancement should apply.

### D. Effect of an Unauthorized Transfer on the Legal Title of Cash Under Common Law

There is nothing in the record to show that the money taken from the ATMs was specifically assigned to the victims' accounts when it was placed by the banks in the ATMs. Therefore, the money placed in the ATMs was the banks' property until lawfully withdrawn. *See* 53A Am. Jur. 2d Money § 17 (2009) ("Since United States currency is normally considered to be a bearer instrument, possession of such property is prima facie evidence of ownership.") Coerced or unauthorized withdrawals did not divest title of the money from the banks. *See* 53A Am. Jur. 2d Money § 21 (2009) ("Since possession of money vests title in the holder, the title to money passes with delivery to a person who acquires it in good faith and for valuable consideration."); 53A Am. Jur. 2d Money § 22 (2009) ("Money lost by theft remains the property of the owner . . . ."); *id.* n.2 ("Where a person receiving money is a party to the fraud or conspiracy by which the money is procured, that person's title to it is not good as against the true owner."). Accordingly, the money withdrawn from the ATMs under duress or by theft was the property of the bank.

In light of the aforementioned caselaw, statutes, and the purpose of U.S.S.G. § 2B3.1(b)(1), the sentencing enhancement should apply here. Accordingly, the two points should be added to Defendant's offense level pursuant to U.S.S.G. § 2B3.1(b)(1).

## II. Imposition of Consecutive Sentences Pursuant to 18 U.S.C. § 924(c)

The statute at issue, 18 U.S.C. § 924(c), states in relevant part:

> (1)(A) Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime--
> . . .
>     (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years;
> . . .
> (C) In the case of a second or subsequent conviction under this subsection, the person shall--
>     (i) be sentenced to a term of imprisonment of not less than 25 years
> . . .
> (D) Notwithstanding any other provision of law-- . . .
>     (ii) no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence or drug trafficking crime during which the firearm was used, carried, or possessed.

Pursuant to subsection (c)(1)(D)(ii), any sentence imposed under section 924(c) shall run concurrently with "any other term of imprisonment imposed" on Defendant. The Supreme Court has interpreted the phrase "any other term of imprisonment imposed" to include both state and federal terms of imprisonment. *United States v. Gonzales*, 520 U.S. 1, 5 (1997). As a result, "the plain language of 18 U.S.C. § 924(c) forbids a federal district court to direct that a term of imprisonment under that statute run concurrently with any other term of imprisonment, whether state or federal." *Id.* at 11. Accordingly, this Court must impose any applicable terms of imprisonment

under Section 924(c) consecutive to Defendant's state and federal court sentences for robbery.

## II. Effect of the "Except" Clause in Section 924(c)(1)(A)

Defendant maintains that the "except" clause at the outset of Section 924(c)(1)(A) nullifies the seven-year mandatory enhancement and that Defendant is subject only to the 25-year minimum sentence required by subsection (c)(1)(C)(i). (Doc. No. 87 at 6-7.) The Government argues in opposition that the "except" clause does not prohibit imposing both terms of imprisonment. (Doc. No. 95 at 2-3.)

Defendant cites *United States v. Whitley*, 529 F.3d 150 (2d Cir. 2008), for the proposition that the Court cannot impose a consecutive seven-year term on the Section 924(c)(1)(A)(ii) count because Defendant is subject to a 25-year mandatory minimum sentence under Section 924(c)(1)(C)(i). (Doc. No. 87 at 6-7.) The defendant in *Whitley* discharged a gun during the robbery of a deli and was convicted of robbery in violation of 18 U.S.C. § 1951, discharging a firearm in violation of 18 U.S.C. § 924(c)(1)(A)(iii), and an armed career criminal offense in violation of 18 U.S.C. § 924(e). *Whitley*, 529 F.3d at 151. The Second Circuit reversed the sentencing court's imposition of a 10-year consecutive sentence under Section 924(c)(1)(A)(iii) for discharging the gun because the defendant was subject to a higher, 15-year mandatory minimum sentence on the armed career criminal offense under Section 924(e). *Id.* In doing so, the Second Circuit reasoned: "where a defendant is exposed to two minimum sentences [under Section 924(c) or by any other provision of law], . . . only the higher minimum should apply." *Id.* at 155. Thus, the defendant was subject only to the 15-year minimum mandatory sentence under 924(e).

The defendant in *Whitley* was charged with a single firearm in violation of Section 924(c) and a single armed career criminal offense in violation of Section 924(e) for a single criminal act of discharging a gun during the course of a robbery. Defendant, however, was charged with two

counts of robbery and two counts of illegally using a firearm in violation of Section 924(c) arising out of multiple robberies over the span of a week. (*See* Doc. No. 70 at 16-19 (stipulating that the offenses occurred between January 6-13, 2008).) Because there are multiple instances of criminal conduct here resulting in multiple violations of Section 924(c), *Whitley* is not instructive as to whether both the seven and twenty-five year mandatory sentences under Section 924(c) should be imposed in the instant case.[3]

Supreme Court precedent requires both the seven and twenty-five year sentences to be imposed here. In *United States v. Deal*, 508 U.S. 109 (1993), the defendant was convicted of, among other things, six counts of violating Section 924(c) arising out of six different bank robberies over a four month span. *Id.* at 130. The defendant was sentenced to five years on the first Section 924(c) count and twenty years on each of the remaining five Section 924(c) counts, all terms to be served consecutively for a total of 105 years. *Id.* at 131. In affirming this sentence, the United States Supreme Court held that the term "conviction" refers to the finding of guilt (whether by jury verdict or plea of guilty)[4] and that the term "second or subsequent conviction" included multiple

---

[3] The Government cites *United States v. Segarra*, ___ F.3d ___, 2009 WL 2932242 (11th Cir. Sept. 15, 2009), which held that the "except" clause of Section 924(c) did not prevent consecutive sentences from being imposed for a Section 924(c) offense and an underlying drug offense with greater mandatory minimum sentence. This case is not applicable because Defendant was not convicted of a drug offense with a greater mandatory minimum sentence than his Section 924(c) offense. Rather, Defendant was convicted of two counts of robbery and two Section 924(c) firearms offenses. The "except" clause is wholly inapplicable to the robbery charges because there is no minimum mandatory sentence for robbery. 18 U.S.C. § 1951. In addition, the panel in *Segarra* distinguished *Whitley* on the grounds that it involved two firearm offenses and *Segarra* involved one firearm and one drug offense. *Segarra*, 2009 WL 2932242, at *2 n.1. Accordingly, even if *Whitley* applied here, and it does not for the reasons discussed above, *Segarra* is distinguishable from *Whitley*.

[4] The rationale of *Deal* applies whether the defendant was convicted by jury verdict or guilty plea. *See United States v. Couch*, 291 F.3d 251, 254 (3d Cir. 2002) ("Unlike *Deal*, before us is a plea of guilt rather than a finding of guilt by a jury or judge. This difference need not detain us long.

violations of Section 924(c) brought under the instant indictment. *Id.* at 132.[5]

Section 924(c) was amended in 1998, five years after *Deal*, to include the "except" clause in subsection (c)(1)(A) which prohibits the imposition of a sentence under Section 924(c) where "a greater minimum sentence is otherwise provided by this subsection or by any other provision of law." Pub. L. 105-386, § 1(a)(1) (1998). However, the 1998 amendments do not affect the application of *Deal* to this case. The 1998 amendments were made (1) to overcome the Supreme Court's interpretation of the term "uses or carries a firearm" in *Bailey v. United States*, 516 U.S. 137 (1995); (2) to provide graduated penalties of five, seven, and ten years for possession, brandishing, and discharge of a firearm; and (3) to increase the subsequent conviction penalty from twenty to twenty-five years. *Whitley*, 529 F.3d at 154-55. None of these amendments affected the imposition of consecutive sentences for multiple Section 924(c) offenses charged in a single indictment. Indeed, *Deal* remains valid law and requires a sentencing court to impose a sentence pursuant to subsection (c)(1)(A) for the first conviction of Section 924(c) in an indictment and then impose an additional twenty-five year consecutive sentence for each additional conviction of Section 924(c) in that indictment pursuant to subsections (c)(1)(C)(i) and (c)(1)(D)(ii). *See, e.g.*, *United States v. Travis*, 311 F. App'x 305, 314 (11th Cir. 2009); *United States v. Johnson*, 265 F. App'x 833, 835 (11th Cir. 2008); *United States v. Stamps*, 201 F. App'x 759, 761 (11th Cir. 2006).

Like the defendant in *Deal*, Defendant was convicted of multiple violations of 924(c) arising out of multiple criminal acts and thus both the seven and twenty-five year mandatory minimum

---

Inasmuch as a plea of guilt is the moment when the defendant declares himself guilty, for our purposes here, it is equivalent to the same declaration made by a judge or jury.").

[5] The Government also cited *United States v. Rawlings*, 821 F.2d 1543, 1545 (11th Cir. 1987), in which the Eleventh Circuit reached the same result as the Supreme Court in *Deal*.

sentences should be imposed.

## III. Imposition of Federal Robbery Sentence Consecutive to the State Prison Sentence

Defendant argues that his federal sentence for robbery should run concurrent to his state sentence for robbery pursuant to U.S.S.G. § 5G1.3(b). (Doc. No. 91 at 4; Doc. No. 87 at 8.) The Government's sentencing memorandum does not address this issue.

Pursuant to 18 U.S.C. § 3584, the sentencing court has the discretion to order sentences to run concurrently with or consecutively to Defendant's state prison sentence, provided that the court first calculates the correct guidelines sentence and departs from that sentence only by considering the § 3553(a) factors.[6] *United States v. Covington*, 565 F.3d 1336, 1346-47 (11th Cir. 2009); *see also United States v. Hearing*, 253 F. App'x 874, 876-77 (11th Cir. 2007) ("Here, the district court erred in failing to sua sponte consider U.S.S.G. § 5G1.3 in imposing Hearing's sentence. We have held that even under the post-*Booker*, advisory sentencing guidelines, that the district court must consult the guidelines and correctly calculate the guidelines sentence.") (citing *United States v. Crawford*, 407 F.3d 1174, 1179 (11th Cir. 2005)). "Once those factors are considered, the only limitation on running sentences consecutively is that the resulting total sentence must be reasonable, and ordinarily a sentence within the advisory guidelines range is reasonable." *Covington*, 565 F.3d at 1147.

The applicable sentencing guideline, U.S.S.G. § 5G1.3 states:

[If] a term of imprisonment resulted from another offense that is relevant conduct to
the instant offense of conviction under the provisions of subsections (a)(1), (a)(2),

---
[6] As discussed above, this Court must impose seven and twenty-five year sentences consecutive to all other state and federal sentences for Defendant's violations of Section 924(c). *Gonzales*, 520 U.S. at 11. Section 924(c) "does not, however, limit the court's authority to order that other federal sentences run concurrently with or consecutively to other prison terms - state or federal - under § 3584." *Gonzales*, 520 U.S. at 11.

or (a)(3) of § 1B1.3 and that was the basis for an increase in the offense level for the instant offense under Chapter Two (Offense Conduct) or Chapter Three (Adjustments), . . . (2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

Defendant correctly maintains that his co-defendant's brandishing of a firearm resulted in a term of imprisonment in state court and was relevant conduct that increased his offense level for federal robbery. Paragraph 86 of the PSR noted that the circumstances of Defendant's state crime are set forth in Paragraph 32 of the PSR. Conduct in Paragraph 32 of the PSR was used to enhance Defendant's sentence for federal robbery by 5 levels as set forth in Paragraph 59 of the PSR. Thus, under U.S.S.G. § 5G1.3, Defendant's federal robbery sentence should run concurrently with the state robbery sentence. However, the Court is not bound by the Guidelines post-*Booker* and may impose any reasonable sentence taking into consideration the Section 3553(a) factors. *Covington*, 565 F.3d at 1346-47.

**Conclusion**

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Two points should be added to Defendant's offense level pursuant to U.S.S.G. § 2B3.1(b)(1);

2. Consecutive seven and twenty five year sentences should be imposed pursuant to Sections 924(c)(1)(A)(ii), (c)(1)(C)(i), and (c)(1)(D)(ii), and these sentences must run consecutive to Defendant's other state and federal terms of imprisonment; and

3. Pursuant to U.S.S.G. § 5G1.3 Defendant's federal robbery sentence may run concurrently with the undischarged term of his state robbery sentence. However, the Court has the discretion to impose a consecutive sentence for

the robbery counts if reasonable in light of the Section 3553(a) factors.

Dated this  day of November 12, 2009 in Orlando, Florida.

_____
PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record